United States v. Sjodin, and it's 23-4069, and we'll hear from you, Mr. Sandford. Good morning. May it please the Court. My name is Dean Sandford from the Federal Defenders, and I'm here for Kirk Sjodin. I'd like to start with the conviction issue, which is whether Mr. Sjodin presented sufficient evidence to support a reasonable doubt that he believed the civil rights were restored. Our position is that he did. The records from the Oklahoma case established that he was charged with possessing a firearm, but not for being a felon. Instead, he was charged with misdemeanor possession while under the influence. As Mr. Sjodin argued, the State's choice to charge him with only the misdemeanor led him to believe that he was no longer a felon. Otherwise, he would have been charged in that way. Well, he would have been charged under the Oklahoma Felon in Possession Statute or 922 G1. Well, who knows? I mean, he's a layperson, so he doesn't know, but everyone knows that being a felon, you can't own firearms. Not everybody knows that Oklahoma has a felon in possession statute. That may be true, but I think it's generally known among laypeople. If you ask a layperson on the street whether or not it's legal for a felon to possess a firearm, they're going to say no. Okay. It's a very common prescription. You know, we're not saying Mr. Sjodin knew the ins and outs of Oklahoma law, the ins and outs of Federal law, or anything else. But what this charge communicated to him was, well, for the government to prove that this possession is illegal, they have to prove that I'm intoxicated. Why would they take that extra step if my status alone prohibits me from having a firearm? I mean, that's a great argument, but he did not testify. All he did was put in two documents, and that's enough, you think, to infer that we're going to take from those documents what he thought those documents told him? I mean, didn't he need to at least get up on the stand and say, I looked at these documents, and I thought that it had been expunged, and I didn't think I anymore had the status? Sure. I have two responses to that, and the first one is that it certainly would have been helpful for him to testify. Yes, it would. But the documents, I think, were enough, and this is for a couple of reasons. So first, to prove state of mind, you don't have to have direct evidence. You can prove state of mind by circumstantial evidence. Well, wait a minute, counsel. One of the documents was just the docket sheet. Isn't that right? A docket sheet and a judgment. That's correct. OK. The docket sheet that I looked at doesn't get you anywhere with me. So how does the other one get you there? Because I'm exactly where Judge McHugh was saying. Sure. The way you normally try a case, if you're going to put on testimony, is you're sworn. And that was my question. Was he sworn before he introduced these two dockets, the two documents that was introduced? Well, he was. If not, he just made a nice speech to the judge. Well, no, he was not sworn for his closing argument or opening statements, and we're not relying on those as evidence. But let me explain why I think that the docket sheet. Counsel, you've got to understand with me, you've got to have something more than what you're relying on. I just want to clear it up between you and me right now. No, I totally understand your position. But what we have are these two documents. So let me explain to you why I think they were enough. So the docket sheet, what the docket sheet shows is what he was charged with. And he was charged with possession of a gun, but while he was intoxicated, not as being a felon. So the question is. Under Obama law or the Federal statute? Which one was it? Well, it was a State charge. It was a State charge. OK. But as I mentioned before, what these documents communicated to him was that. Well, how do we know what they communicated to him? Well, I think that you can. So his opening statement and his closing arguments, they're not evidence. That is absolutely right. They're not evidence. But what lawyers use those for is to highlight for the jury the inferences that they're drawing from them. And you can certainly look to them for that purpose. Well, this is a bench draw. Well, to the fact finder. It doesn't have to be a jury. But that's the purpose of closing argument and opening statement. More closing argument is to say, here's the evidence we have. Here are the inferences we want you to draw from them, fact finder, whether it's jury or judge. Now, run it by me again, because the two evidences that he has is the docket sheet and the judgment. So how does that climb the hill that you're trying to climb? I mean, I certainly agree with you that it's not much. He was representing himself pro se. He probably should have testified. But we maintained that these documents were enough to at least create a reasonable doubt as to what his belief was. Well, there was another document that he didn't put into evidence, I think, from the record, where the judge checked that he was not a felon. But that's not one of these two, right? It is not one of those two. He did not put that document into evidence. I cannot explain why. Could this just be prosecutorial discretion of what they decided to charge him with? Well, I think you have to, again, look at this from a layperson's perspective. This were the initial charges that were levied against him. And if the government could prove that his possession was unlawful based solely on his status, why bother proving that he was intoxicated? There would have been no need for them to take on that extra burden. And that's the inference that he drew from them. And I understand it would be a stronger case if he had testified. Yeah, I mean, it's not an easy inference from the documents that were provided. I understand. I understand that. Well, now, let's make sure I'm on the same page with you. Are we here on plain error? Well, no. You're not on this issue. We're not on plain error. OK. Let's move to the issue of which we are on plain error. Sure. We have to look at this under the categorical approach. That's right. And we look at California law. Can you cite me to any California state cases which has used the wording in that, I forgot the name of the California state case. Are there any other cases out there that California courts have been able to look at and say that this was plain error? Because that's what we, I'm struggling true with the question, is the error plain that you're arguing? And I know from my reading through it and everything, by the time I got through the point, I was lost again. So help me out there. OK. All right, let me see if I can. So Williams is the California Supreme Court's definitive statement of what the mens rea is for California assault. It was decided 20 years ago. It hasn't changed since then. And what Williams says is, the defendant doesn't have to be subjectively aware of the risk that a battery put her. But other state courts cited that. But it's the highest court in California. I don't know why we would need another state court. It is the definitive and authoritative explanation of what California law is. And it says that subjective knowledge of the risk, subjective awareness of the risk is not required. That's exactly what's required even for recklessness under Borden, is a conscious disregard of the risk. So on the one hand, you have Borden saying, recklessness, you need subjective awareness of the risk. California Supreme Court saying for California assault, you don't need that. It doesn't matter whether the defendant was aware. It's whether a reasonable person, knowing the facts that the defendant knew, would think a battery was likely to occur. Well, and there's California Court of Appeals cases who cite Williams for that proposition. That's right. And California Supreme Court cases, I think, that have come after that. That law is settled. It's been settled since 2001. And I think that's what makes the error plain, is on the one hand, you have recklessness requires subjective awareness. The California statute does not. I think that ends the matter. Because even recklessness doesn't count under the elements clause. And what California has done instead is use this reasonable person standard, which more closely approximates negligence. It's an objective standard in which the defendant's awareness doesn't make any difference. Well, and did the Ninth Circuit held that as well? Yes, in Gomez. That's right. Let me ask you, Mr. Sandefur, let's say, hypothetically, you make an argument to us, your opposing counsel makes an argument to us. We don't call you on it. We silently disagree with it. We don't mention it in the opinion. Does that implicitly and conclusively show that we must have endorsed the mutual position that you and opposing counsel had advocated because we didn't say anything about it? I think that's a tricky question. I mean, I think ordinarily, when you're looking at a case and reading to see what a case means, you look at what the case says. I mean, I think there's certainly an argument that if there's a kind of untested assumption underlying an opinion that has gone unchallenged, then probably you could make an argument that that's what the court meant. But I guess I'm not under, maybe I'm not understanding your question. It looks like maybe I'm not answering it. No, I think you are. I think you are answering it. Okay. I mean, I guess I'm not sure exactly how it maps on to this case because we have Williams saying explicitly that subjective awareness of the risk is not required. And again, that's exactly what Borden says recklessness is. Now, a lot of the cases that were pre-Borden that held that California assault was a crime of violence rely on the intentional act requirement. So Williams says assault requires an intentional act. But Borden makes clear that an intentional act isn't enough. It can be enough to show a use of physical force, but it doesn't show that the use of physical force was against another. And you see this in the reckless commuter example that's used in Borden. That commuter made two intentional acts. He drove the car on purpose and he intentionally ran a red light, but he didn't train the car towards another person so it wasn't force against another. So the intentional act requirement just doesn't get you far enough. And neither does this idea that California assault is a general intent crime. Because even Williams says that's not really a useful way to define the mental state. It's really just a signal that certain defenses aren't available like voluntary intoxication. And general intent in its kind of typical definition is you intend to be act, but you don't intend the consequences. So you're right back around to this intentional act requirement which doesn't show that force was used against another person. This is exactly what the Ninth Circuit said in Gomez, which is the only Ninth Circuit case post-Borden to address this. And, of course, they reached the same conclusion that we're advocating for here.  Did Gomez specifically hold it wasn't a crime of violence? Yes. Under both the Elements Clause and the Enumerated Offenses Clause. And I can address the Enumerated Offenses Clause really quickly. Remind me whether Gomez was a plain error case. Gomez wasn't a plain error case. Was or wasn't? It was not. I'm sorry, it was not. The Enumerated Offenses Clause, the only possible enumerated offense that could match this is aggravated assault. And as we've shown in our briefs, every circuit to address the issue has said that generic aggravated assault requires extreme indifference recklessness, so the kind of recklessness that's necessary for second-degree murder. Under Williams, this crime doesn't even require recklessness, so I don't think it's even plausible that this crime qualifies as generic aggravated assault. Unless the Court has further questions, I'll— Well, let's stop this clock. Can I ask you one quick—by the way, there's a good reason you didn't understand my question, because it really—I was conflating this with Calderon. If he put in a question I had asked you— Oh. Yeah, so— It's another case. It's your next case. Oh, okay, okay, all right. Sorry about that. No, no, that's okay. That makes me feel better. Thank you. No, I want to go back. Sorry to keep going back and forth on your issues. No, that's okay. On your first issue—  Let's say he had not said anything in opening or closing about that he thought that his civil rights had been restored. Would he still have satisfied his burden of production? I don't think it would be a much closer question, and I do understand that the opening and closing aren't evidence. There's no question about that, but I do think that they're useful in the sense that they help direct the fact finder to the inferences that the lawyer or the pro se litigant is trying to draw from the evidence. So I do think it would be a closer question. I do think it's helpful that he actually made the arguments.  Okay. No. Okay. Thank you. All right. Thank you. Good morning, Your Honors. May it please the Court, Briggs Matheson on behalf of the United States. The evidence at trial was sufficient to prove that at the time Mr. Shodine possessed the rifle in southern Utah, he knew that he had previously been convicted of shooting a man in California for which he served a nearly nine-year sentence in state prison. Mr. Shodine failed at trial to adequately support any of the various theories he presented about what might have happened to that prior felony conviction, including the argument that he presents on appeal that he subjectively believed his civil rights had been restored. I think to address Your Honor's questions about the two documents that Mr. Shodine put in evidence, those documents tell us nothing about Mr. Shodine's prior felony conviction. They have nothing to say about rights restoration. And most importantly, they have nothing to say about what Mr. Shodine actually subjectively believed at the time of the offense in this case. And that's the fundamental problem with his sufficiency of the evidence claim. The district court properly considered the trial evidence, which consisted only of Mr. Shodine's stipulations and six exhibits. The firearm, the three reliable records that the government tendered in evidence showing Mr. Shodine was present and in court at the time of his conviction and sentence, and then the two documents that Mr. Shodine entered into evidence, the docket and the judgment from the Oklahoma case. But we don't know, because there is no confident evidence in the trial record about what Mr. Shodine actually subjectively believed when he possessed that rifle about his prior felony conviction, why he held that belief, when he formed that belief. And his comments during the bench trial don't shed any light on what he believed in relation to those two documents that he did put in evidence. Judge McHugh, you asked about other proposed exhibits that Mr. Shodine did lodge with the court prior to the bench trial. That was the plea agreement in the Oklahoma case. And I think it's telling that after the bench trial, in advance of sentencing, Mr. Shodine pointed to that document and said that he could have presented the argument that he subjectively believed his civil rights had been restored based on what his prior attorney, Ron Mickey, who had represented him in the Oklahoma case, had told him about his civil rights and based on what the trial judge in Oklahoma had told him. The problem is that Mr. Shodine didn't actually put any of that evidence in the record, despite being advised by the court about what he would need to do to move his proposed exhibits into evidence, and the fact that Ron McGee was sitting in the back of the courtroom, ready, willing, and able to testify. And indeed, the government and the trial judge expected that Ron McGee would testify about what he may or may not have told Mr. Shodine. And so on this record, the evidence was certainly sufficient for a reasonable juror to conclude that Mr. Shodine had the requisite knowledge of his prohibited status at the time of the offense. Is Mr. Shodine's defense an affirmative defense, or is it more an element-negating defense? I think it is most consistent with what the Supreme Court has said in Rahafe and in Greer about what the government has to prove to satisfy this element, to say that the government always bears the burden to prove beyond a reasonable doubt that the defendant knew he'd previously been convicted of a felony. And a defendant is free to argue that for whatever reason he lacked such knowledge. And that is best understood within the framework of reasonable doubt. Indeed, Justice Sotomayor. So it's an element-negating. Correct, Your Honor. It's essentially an argument that the government has not satisfied its burden on that element. And that's precisely how the Eighth Circuit understood this kind of a defense to work in the Jackson case that's cited in the government's brief. Recall that in Jackson, the defendant in that case made precisely the same argument at trial that Mr. Shodine is arguing now on appeal that he could have made. The defendant in Jackson said, I didn't know that I was previously convicted of a felony because I subjectively believed that my civil rights had been restored. And the key difference is that the defendant in Jackson took the stand at his own trial. And he testified. And he said, I didn't know that I was a felon because I believe my civil rights were restored because when I was discharged from parole, a parole officer presented me with discharge papers. I signed them. And the parole officer said, you can now vote and do anything a US citizen can do. Your rights have now been restored. And what the district judge did in Jackson is it instructed the jury that the government bore the burden to prove beyond a reasonable doubt that the defendant knew he'd previously been convicted of a felony. And in deciding whether the government had met its burden on that element, the jury could consider the defendant's argument that he believed his civil rights had been restored. Now, Mr. Shodine could have litigated his defense the same way. He chose not to. And the only way to draw the inferences that Mr. Shodine is asking this panel to draw is to go outside of the trial record. His comments during the opening statement and closing argument, of course, are not evidence. And they don't shed light on what inferences he would have drawn from those two documents, from the docket and the judgment in the Oklahoma case. Well, Mr. Matheson, is that really fair? I mean, he's a pro se litigant. And he presents the docket sheet and the judgment. And in a vacuum, had it not been explained to the judge in opening statement, what the inferences that he wanted drawn from the docketing statement or the judgment might have been very difficult to detect. But it was clear from the opening statement what he was arguing that the inference to be drawn from these two documents was. And he is pro se. And it's only a burden of production. It's not a burden of persuasion. So why isn't it at least a reasonable inference that he had satisfied his burden of production? Because it was apparent to the judge already the inference that he wanted drawn from it. Two responses to that question, Judge Bacharach. The first is that from the documents themselves, it is not clear what inferences can be drawn about what Mr. Shodian actually believed, what he was relying on informing that belief. We don't know what argument or evidence Mr. Shodian might have presented had he been under oath, subject to penalty of perjury, subject to cross-examination by the government, if he had testified or if he had called his former lawyer to testify about what he actually believed. The second point is that Mr. Shodian said quite clearly in his opening statement and closing argument what the centerpiece of his argument was at the bench trial. And it was not that he subjectively but mistakenly believed his civil rights had been restored. His argument was that his civil rights were as a matter of law restored. In fact, he opened his opening statement at the bench trial by saying, and this is a quote, there is nothing else to talk about except for have the defendant's rights been restored or not. He went on on eight more occasions during the opening statement to say that his argument was that his civil rights were as a matter of law restored under section 921A20. And so even his statements during opening statement and closing argument don't shed light on the issue he is raising today about his subjective beliefs. And in fact, what he did say about what he had been told about his prior felony conviction, it's not clear what their relevance is to those two documents that he put in evidence. Let me give you just one example. He said in his closing argument that he in Oklahoma 10 years ago that his civil rights were going to be restored. Now, there's no evidence in the record that that person exists, that that conversation took place, that that's something that Mr. Shodian relied on in forming a subjective belief about what had happened to his prior felony conviction. And there's nothing in his argument or in evidence that would suggest that that story about what he was told about his civil rights has anything to do with the docket sheet or the judgment in the Oklahoma case, which merely showed that he'd been convicted. Well, why is that? I mean, he says that he had been told that when he had satisfied his parole that his rights would be restored. When his rights, when that period had elapsed, when the parole period had expired, Oklahoma did prosecute him for a violation, but not a felony possession statute. So I think that those two are in sync. Well, to be clear about what he said about his rights restoring, he said that his rights were automatically restored once he got off of parole, but don't hold him to that, because that's just something that his legal assistant and spouse had told him. And so ultimately, I think the question for this court is whether there's anything in the record that would suggest that Mr. Shodian had a subjective belief that his civil rights had been restored at the time of the offense. And there is no such evidence. I do want to address, if I may, the sentencing issue, and in particular, this question about what the California Supreme Court said in People v. Williams. The question for this panel is whether it is clear or obvious that California Penal Code Section 245A has a mental state that is incompatible with the Borden plurality's concerns about targeting and the deployment of physical force against another person. And due respect to the California Supreme Court, but it has not articulated an answer to that question with the sufficient clarity for Mr. Shodian's claim to prevail under a plain error standard. If 245A does require a mens rea less than recklessness, you do not dispute that it would not satisfy the elements or the enumerated offense claims? That's correct, Your Honor. But that's an important point, your framing of whether Williams articulates a mental state for Section 245A below recklessness, because that is what the Gomez panel in the Ninth Circuit suggested, is that actually what Section 245A requires for a mental state is something below recklessness, some form of negligence. Now, the problem with that is that to the extent People v. Williams says anything with clarity, it said quite clearly that negligence is not enough under Section 245A. And it said it in two ways. First, with respect to the particular jury instruction that was at issue in Williams, the problem with that jury instruction is that it would have allowed for a conviction under a negligence standard. It would have allowed the jury to convict the defendant based on facts that he did not know, but that he should have known. And Williams said that was error. That was harmless error. But that was the error with the jury instruction in that case. Second, in People v. Kalantulona, which was the case in which the California Supreme Court interpreted the mens rea for Section 245A before Williams, the California Supreme Court said that negligence is not enough. And in Williams, the California Supreme Court affirmed that holding and said, we are not disturbing that holding. What we are doing is we are adding, and this is a quote, an actual knowledge requirement. And the Gomez.  I beg your pardon? Of the act. Of the facts sufficient to show that the intentional act by the defendant would have the direct, natural, and probable result of the application of physical force against another person. In other words, a defendant guilty of assault must be aware of the facts that would lead a reasonable person to believe that a battery would directly, naturally, and probably result from this conduct. That's the sentence immediately following the sentence that you're relying on in 788. Correct, Your Honor. Two pages later, the California Supreme Court states it's holding, I think, with greater clarity and stating without using this reasonable person language. And to be clear. Two pages later, it says what? It says that we hold that assault requires that the defendant engage in an intentional act and that he actually knows the facts sufficient to show that his intentional act, I'm paraphrasing, by the way, will have the direct, natural, and probable consequence of the application of physical force. How do you square that with footnote 3? A defendant who honestly believes that his act was not likely to result in battery is still guilty of assault if a reasonable person, viewing the facts known to the defendant, a reasonable person would find that the act would directly, naturally, and probably result in a battery. I don't see anything in the text, even including the provisions that you're citing, where it imposes a subject, an actor, in the phrase would naturally and directly produce a result in a battery. You have that predicate clause, but there's no subject attached to it except on 788. And in footnote 3, where it interposes the subject, a reasonable person. Your Honor, I don't disagree that Williams contains language that is at times internally inconsistent and that can be read to suggest a standard that falls below the purpose or knowledge that the board in plurality was concerned about. The problem is that that's not all that Williams says. And the type of mental state that People v. Williams was trying to articulate, I think, is arguably the type of heightened recklessness or the more extreme version of recklessness that this Court and the other courts of appeal cited in the government's brief has held falls somewhere between recklessness and knowledge and satisfies the Borden's concerns about targeting. But we know, OK, I'm sorry, you go ahead. My only follow-up point, Your Honor, on that is that if you look at what Borden has to say about ordinary recklessness, about simple recklessness, the reason that does not satisfy the plurality's concerns about targeting and directing physical force against another person is because it has at its core a concern about the defendant paying insufficient attention to his conduct and a risk that need not come anywhere near a likelihood of occurring. That's not the kind of risk that the California Supreme Court is concerned about in Williams. And we know this when you take Williams in its entirety and what it was trying to do. Keep in mind that what the California Supreme Court explicitly was trying to do in Williams was to clarify the confusion that it had created in People v. Kalantuona. Now, I happen to agree with the dissent in Williams on this one point, that in trying to do so, it actually compounded the confusion created by Kalantuona. But it did say quite clearly that in People v. Kalantuona, you had to have an intentional act that would have the direct, natural, and probable result of the application of physical force. What Williams adds to that is an actual knowledge requirement and says that a defendant can't have the requisite intent under the statute unless he actually knows the facts sufficient to show that his intentional act, by its very nature, not by some unforeseen consequence or ancillary condition. By its very nature, it will have the direct and likely consequence of the application of physical force against the defendant. Under a reasonable man's standard, though. While the Williams court did articulate or did use the words a reasonable person, it went on to expressly disclaim articulating a negligent standard. And again, this is. Well, can I? Please, Your Honor. No, go ahead. I keep talking. I'm sorry. But the only thing that I wanted to make sure that I'd factor into your answer is in footnote four, where you mentioned the Colantano case. But in footnote four, Williams specifically equates recklessness in its historical sense as a synonym for criminal negligence. So I'm not sure that I'm as confused about Williams as maybe I should be. But it seems to be that Williams is specifically saying, OK, in Colantano, they're talking about recklessness. We're talking about it in its historical sense, not as a subjective awareness of risk, but in terms of its synonym for negligence. Negligence is not enough. And then on 788, it says, you have to be aware of the direct act that will directly and naturally result in a battery, but would directly and naturally result, it says, in other words, on a reasonable band standard that is made abundantly clear in footnote three, that you don't have to be subjectively aware that it will result in a battery, just that it would reasonably do that. So it's a long-ass question. But it seems to me that it's clear. But why am I oversimplifying it or just wrong? I see that my time has elapsed, if I may answer the court's question. Two responses to that question, Your Honor. The first is, I think, understanding the context for People v. Williams and why it uses this language about why a defendant need not have the subjective awareness of the risk of a particular harm. The reason it uses that language is because that was the central issue in both People v. Colantumono and People v. Rocha. The question in those cases was whether the defendant has to specifically intend to cause a particular injury. And People v. Colantumono comes in and says, no. Section 245A is a general intent statute. A defendant need not specifically intend to cause a particular injury. And Williams, in trying to clarify what Colantumono meant, adopts that language and says, we're not changing the law here. We agree with Colantumono that a defendant does not need to be subjectively aware of the risk of causing a particular harm or injury. But we do think that Colantumono failed to adequately explain what a defendant does have to know. The defendant does have to actually know that his intentional act, by its very nature, will have the direct and probable result of the application of physical force against another. And so just to contextualize that standard a little bit more concretely, the type of conduct that Williams was concerned about, I think the best example is the People v. Osnovale case. That's the A-Z-N-A-V-O-L-E-H case that's discussed in Gomez and in the concurrence in Gomez. There, the defendant, this was a reckless driving case, sped through a red light. And there were facts showing that the defendant himself actually knew that by his intentional act, by speeding through that red light, he would directly and naturally inflict physical force against the victim car because there was evidence to prove that he saw the car in the cross traffic and that his passengers warned him not to hit it. When you have those kind of facts, that's the kind of actual knowledge requirement that Williams requires. When you have the kind of facts that we have in Williams, you understand now when I say we're on plain air, it ain't plain. Judge Baldock, I agree that the difficulty in this case is that People v. Williams does not say clearly and obviously what the mental state under Section 245A is, nor has the Ninth Circuit. It has spoken out of both sides of its mouth in terms of which standard it thinks should apply under Section 245A, and under that plain air standard, we ask this court to affirm. Unless there are further questions, Your Honors. Thank you. A poll, we went a little over time. We've got to do it again. Anyway, let's give him another minute and a half. Okay, I just have a couple of points. The first one is there's nothing internally and consistent about Williams. I mean, Williams says the defendant has enough facts that would lead a reasonable person to know that a battery will probably occur. That's a perfectly fine interpretation of what it was saying before, when it said the defendant has enough facts sufficient to create the situation. I don't remember exactly the language where a battery would likely occur. So if you look at the paragraph that's the block quoted in our reply brief, that's where Williams states it's holding. And it says two complementary things. One thing is the defendant doesn't have to be subjectively aware of the risk, which is exactly what Borden says you need for recklessness. Instead, you look at it from an objective standpoint and say, would a reasonable person have been aware of the risk? That moves the needle closer to negligence than recklessness. I understand that Williams says criminal negligence isn't enough, but wherever we are, we're less than recklessness because recklessness requires subjective awareness of the risk. So the government talked a lot about the prior cases, Calitano and all that sort of thing. None of those cases matter. Williams is from the California Supreme Court. It's their last word on it. I don't think it's confusing. The California Supreme Court has not had to step back in and re-explain it again. So I think if you look at that paragraph in the reply brief, which is the clearest statement of its holding, it's obvious that recklessness is not required because the defendant doesn't have to be subjectively aware of the risk. And I think that's regardless of whatever the facts underlying Williams are. This is the categorical approach. You don't look at the underlying facts. You're looking at the definition of the crime as set forth by the California Supreme Court. Unless the court has further questions. Let me ask you, what is it then you would ask us to send it back to do what? To vacate the sentence on that issue. To vacate the sentence and re-sentence without the base offense level increase for the crime of violence. Thank you. I have a totally unrelated question. Sure, sure. So before you were appointed, your client filed an extensive pro se brief. And the order obviously asked you to focus on the rehab issue and whatever else you wanted to address. And you addressed that crime of violence issue. Did your brief amend or supplement your client's brief? And the real question is, are the other issues, for example, the sufficiency of the indictment, there was a number of other arguments your client made. Are those superseded by your brief? No, no, they're not. We were appointed to file a supplemental brief that just addressed additional issues in addition to the ones that he briefed. It's a supplement.  Thank you. Thank you. Thank you for doing that too. Yes, thank you very much. Well, this matter is submitted. Another editorial comment. I thought the briefs and the arguments today were just super. Thank you both.